UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOSEPH WOLHENDLER,

           Plaintiff,

                    MEMORANDUM AND ORDER

        -against-                  19-cv-457 (RPK) (CLP)

ISRAEL GOLDBERG, MERLY L. WENIG,
ABRAHAM (a/k/a "AVI COHEN"), YAAKOV
VIZEL (a/k/a "SHULEM VIZEL"), CHAYIM
YANKEL RUBIN, WAYNE BUTLER, HENRY
GRUNBAUM (a/k/a "HESHY GRUNBAUM"),
GARY SCHLESINGER, FISHEL
MARKOWITZ, MARK SILBER (a/k/a
"MOISHE SILBER"), ARON WELTZ (a/k/a
"ROBERT WELTZ," a/k/a "ARI WEISZ"),
JOHN/JANE DOE 1-25, THE LAW OFFICES
OF GOLDBERG, WEG & MARKUS, PLLC,
THE LAW OFFICES OF WENIG SALTIEL
LLP, THE DOE CORPORATION 1-10,

           Defendants.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      *Pro se* plaintiff Joseph Wolhendler alleges that defendants committed acts of fraud as part of a conspiracy to take over his synagogue and misappropriate its assets. He asserts claims under the civil provisions of the Racketeer Influenced & Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, and seeks damages for injuries purportedly caused by defendants' RICO violations. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and sought judgment on the pleadings under Federal Rule of Civil Procedure 12(c). I find that plaintiff has not established standing to assert a civil RICO claim and

1

has not adequately pleaded a RICO violation. Accordingly, defendants' motions are granted, and the complaint is dismissed.

## BACKGROUND

This case involves disputes over the control of Kneses Israel Seagate, a Brooklyn synagogue. Those disputes are the subject of multiple lawsuits in state court. *See Kneses Israel of Sea-Gate v. Moshe Fettman et al.*, No. 516508/2018 (N.Y. Sup. Ct. filed Aug. 14, 2018); *Rabbi Meir Chaim Brikman v. Avi Cohen et al.*, No. 517352/2018 (N.Y. Sup. Ct. filed Aug. 24, 2018); *Gabil Akbarov et al. v. Wayne Butler et al.*, No. 520908/2018 (N.Y. Sup. Ct. filed Oct. 17, 2018). Wolhendler, a synagogue member, now seeks to bring those disputes into federal court as well, through a lawsuit under the RICO Act. He names as defendants eleven affiliates of the synagogue who allegedly conspired to take control of the synagogue in order to "steal the assets of [the] Kneses . . . [and] deprive Kneses Members" of their synagogue. Compl. ¶ 1 (Dkt. #1). He names as additional defendants two law firms, 25 unidentified persons, and 10 unidentified corporations. *Id.* at 1.

To support his RICO claim, Wolhendler alleges that from May to November of 2018, certain of defendants solicited new members for the Kneses and bribed them to vote for a "new outside board," which then promulgated "[f]alse Board resolutions" as part of a scheme to seize control of the synagogue's bank accounts. *Id.* ¶¶ 1-3, 7. He further alleges that defendants, having effectively taken over the synagogue, mismanaged or defrauded it in various ways. He claims, for instance, that defendants stole rental income from the Kneses, cancelled a substantial debt owed to the synagogue, and incurred unnecessary expenses. *Id.* ¶¶ 10, 12, 13, 16. He also complains about access to the synagogue, stating that defendants leased the building to a school that operates on weekends and Jewish holidays, leaving Wolhendler and the other Kneses members "homeless,"

*id.* ¶ 4, and that on at least two occasions he was denied entry to the synagogue, *id.* ¶¶ 14-15. All of these actions were undertaken, Wolhendler avers, to drive the "rightful members" of the Kneses from the synagogue and deprive them of their membership rights. *Id.* ¶¶ 4-5, 13. He claims that defendants conspired with each other and committed mail fraud, wire fraud, and bank fraud in connection with this scheme. *Id.* ¶¶ 3, 5-8, 11, 13.

Wolhendler seeks to recover damages under RICO's civil provisions, which provide a cause of action to "[a]ny person injured in his business or property" by a criminal enterprise engaged in racketeering activity. 18 U.S.C. §§ 1964(c), 1962(c). Wolhendler claims that defendants operated such an enterprise, *see* Compl. at 9, and he seeks damages that he attributes to defendants' "RICO activities," *see id.* ¶ 15-A. Wolhendler's claimed injuries include the financial mismanagement of the Kneses, being barred from the Kneses's premises, and being charged increased membership dues and "special assessments." *Id.* at 9.

Defendants have moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). They argue principally that Wolhendler lacks standing to assert a claim under RICO and that he has not adequately pleaded such a claim. *See* Mot. to Dismiss for Failure to State a Claim (Dkt. #54); Mot. for J. on the Pleadings (Dkt. #60). For the reasons set forth below, defendants' motions are granted.

## STANDARD OF REVIEW

Motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). In evaluating either motion, a court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai*

3

*Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

Where, as here, a plaintiff predicates a RICO claim on allegations of fraud, he must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004); *7 West 57th Realty Co., LLC v. Citigroup, Inc.*, 771 F. Appx. 498, 501 (2d Cir. 2019) (noting that Rule 9(b) governs civil RICO complaints alleging mail fraud, wire fraud, and bank fraud) (citing *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)). Under Rule 9(b), a plaintiff must "specify the statements [he] claims were false or misleading, give particulars as to the respect in which . . . the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). To plead fraudulent acts with the particularity required by Rule 9(b), a plaintiff must also allege facts supporting a "strong inference" of the defendants' fraudulent intent. *Ibid.* (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)).

Unlike allegations of fraud, allegations of RICO conspiracy are not subject to the heightened pleading requirements of Rule 9(b). *See Sky Med. Supply Inc. v. SCS Supp. Claims*

4

*Servs., Inc.*, 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)). But because "the core of a RICO civil conspiracy is an agreement to commit predicate [RICO] acts," such a complaint, "at the very least, must allege specifically such an agreement." *Ibid.* (quoting *Hecht*, 897 F.2d at 25). As such, a RICO conspiracy claim will be dismissed where the plaintiff alleges "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014). Conclusory allegations that the defendants "agreed to commit" the violations are insufficient. *F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2002).

## DISCUSSION

The federal RICO statute provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962" of the RICO Act. 18 U.S.C. § 1964(c). Section 1962, in turn, makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). "Racketeering activity" is defined as "any act which is indictable" under specified provisions of Title 18 of the United States Code, including mail fraud, wire fraud, and bank fraud. *Id.* § 1961(1)(B). The RICO statute also imposes liability on individuals who conspire to violate it. *Id.* § 1962(d). Wolhendler's complaint does not adequately plead a right to recover under these provisions. First, as explained below, Wolhendler has not adequately pleaded that he has statutory standing to pursue a civil RICO claim—in other words, that he is a "person injured in his business or property by reason of" the conduct he alleges to constitute a RICO violation. 18 U.S.C. § 1964(c). Second, even if Wolhendler had established

5

statutory standing, his complaint would be inadequate, because he has not adequately alleged either a substantive RICO violation or a RICO conspiracy.

    1. <u>Wolhendler Has Not Adequately Pleaded Standing to Bring a Civil RICO Claim</u>

Wolhendler has not alleged facts sufficient to establish statutory standing to pursue a civil RICO claim. As noted above, the RICO statute provides a civil cause of action only to a person who has been "injured in his business or property by reason of" an underlying RICO violation. Accordingly, a plaintiff must adequately plead that he suffered injury to "*his* business or property"—in other words, "business or property . . . [that] belong[s] to the plaintiff." *Pappas v. Passias*, 887 F. Supp. 465, 470 (E.D.N.Y. 1995). A plaintiff cannot sue under RICO for psychic or emotional injuries, because such injuries are not to "business or property," 18 U.S.C. § 1964(c); *see Pappas*, 887 F. Supp. at 470; *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 151-52 (S.D.N.Y. 2014). In addition, a plaintiff generally cannot bring a RICO claim in his personal capacity to recover damages based on an injury to organizations of which he is a member, if the plaintiff's injuries are derivative of those suffered by the organization and no different from those sustained by similarly situated members. *Pappas*, 887 F. Supp. at 470-71. Moreover, because only injuries "by reason of" a RICO violation are compensable, a defendant's RICO violations must be "both the factual and the proximate cause of the injury alleged" for a plaintiff to have RICO standing. *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Whether a plaintiff has adequately pleaded statutory standing for a RICO claim is a merits issue properly addressed on a motion to dismiss under Rule 12(b)(6). *Lerner*, 318 F.3d at 129.

Wolhendler has not adequately pleaded statutory standing under these principles. Most of the injuries that Wolhendler alleges, such as theft or mismanagement of the Kneses's assets, are not injuries to Wolhendler's own "business or property." Because those purported injuries were incurred by the Kneses and not Wolhendler, Wolhendler cannot sue in his personal capacity to recover for them. *See Commer v. Am. Fed'n of State, Cty. and Mun. Emps.*, No. 01-cv-4260 (RWS), 2003 WL 21697873, at *3 (S.D.N.Y. July 22, 2003) (collecting cases); *see also Pappas*, 887 F. Supp. at 471 (explaining that a RICO suit is "an asset of the association or organization . . . injured through a violation of [Section] 1962" and that "the prosecution of a RICO suit by a single member in his own right would impair the rights of other similarly situated members . . . to this asset"). The financial injuries that Wolhendler claims to have suffered personally, such as "rising" membership dues and "special asses[s]ments . . . charged to the Board members and membership," Compl. at 9, cannot support RICO standing because they are derivative of the Kneses's injuries and are "no different from [those] sustained by similarly situated members of the [Kneses]," *Pappas*, 887 F. Supp. at 471. Wolhendler's assertion that defendants excluded him from the synagogue, *see* Compl. ¶¶ 14-15, is more particularized. Because RICO only authorizes suits to recover injuries to a plaintiff's "business or property," however, Wolhendler's claim of exclusion from the Kneses does not give him a cause of action under RICO. *See Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612-13 (S.D.N.Y. 2015) (collecting cases).

Wolhendler's allegations of financial harm are also inadequate for the separate reason that those harms were not proximately caused by defendants' purported RICO activities. Demonstrating proximate cause in the RICO context requires that the plaintiff show "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (plurality opinion) (quoting *Holmes v. Sec. Inv. Protection*

7

*Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirect'" is "insufficient." *Ibid.* (quoting *Holmes*, 503 U.S. at 271) (alteration omitted); *see Baisch*, 346 F.3d at 373 ("[A] plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity."). Wolhendler has not adequately pleaded proximate cause here. None of the fraud offenses alleged in the complaint victimized Wolhendler directly. *See* Compl. ¶¶ 3, 5-8, 11, 13. Rather, the theory of the complaint is that by looting the Kneses of its assets and mismanaging its finances, defendants forced the Kneses to raise dues and impose assessments on the membership. *Id.* at 9. Wolhendler thus has only suffered indirectly as a result of defendants' purported RICO violations. Such indirect injuries are insufficient to establish proximate cause—and thus standing—under RICO. *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-61 (2006) (concluding that plaintiff failed to adequately plead proximate cause, and dismissal of civil RICO claim was therefore warranted, when plaintiff alleged that defendant defrauded the State of tax revenues and was able to undercut plaintiff's prices as a result); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239-40 (2d Cir. 1999) (concluding that health-and-welfare trust funds did not plead injuries proximately caused by RICO violation when the funds' claimed that defendant's misrepresentations to smokers caused the funds to incur higher healthcare costs); *At The Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 63 (E.D.N.Y. 2006) (finding no proximate cause where plaintiff claimed that defendant's misappropriation of a company's funds diminished the value of plaintiff's investment in that company).

      Wolhendler has not alleged that he personally suffered injuries cognizable under the RICO statute that are directly attributable to defendants' fraud. He accordingly has failed to adequately

plead statutory standing. *See American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).

## 2. Wolhendler Also Fails to State a RICO Claim

Wolhendler's RICO claim also fails because Wolhendler has failed in multiple respects to plead a substantive RICO violation or a RICO conspiracy.

### A. Wolhendler Has Not Pleaded a Substantive RICO Violation

To plead a substantive violation of the RICO statute under Section 1962, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. § 1962(a)-(c). Wolhendler has failed to adequately allege any RICO predicate acts, a pattern of RICO activity, the existence of a RICO enterprise, or an effect on interstate or foreign commerce.

### i. RICO Predicate Acts

Wolhendler has not adequately alleged that the defendants committed at least two predicate acts of racketeering activity. *See* 18 U.S.C. §§ 1961(1), 1961(5), 1962(c); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). The complaint alleges mail fraud, wire fraud, and bank fraud—all of which constitute "racketeering activity" under the statute. *See* 18 U.S.C. § 1961(1). But as noted above, *see* p. 4, *supra,* allegations of fraud in a civil RICO action are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the complaint "state with particularity the circumstances constituting [the] fraud." At a

9

minimum, the rule requires the complaint to identify "the specific statements that are false or fraudulent . . . and explain why the statements were fraudulent." *Affinion*, 889 F.3d at 124-25.

Wolhendler's complaint utterly fails to meet this standard. The complaint conclusorily asserts that various documents created by defendants were "false," "fictitious," or "fraudulent" without identifying—let alone explaining—a single misrepresentation contained in those documents. *See* Compl. ¶¶ 3-9, 11. The complaint repeatedly avers that the defendants mailed, emailed, or filed these documents and then simply asserts without any elaboration that such action constituted fraud. But "the transfer of . . . information from one [person] to another is not inherently fraudulent." *Affinion*, 889 F.3d at 125. And "blanket accusations" that "whole documents, [comprised of] numerous discrete statements . . . contained one or more false statements" are "clearly insufficient to meet the particularity requirement of Rule 9(b)." *Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005).

Wolhendler's *pro se* complaint could be liberally construed as stating that defendants used the mails and wires in the furtherance of a broader scheme to defraud. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (providing that the pleadings of a *pro se* plaintiff should be "construed liberally and interpreted to raise the strongest arguments that they *suggest*") (citation and internal quotation marks omitted). In such cases, "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998); *see Angermeir*, 14 F. Supp. 3d at 125-26 (collecting cases). But even when that more generous pleading standard applies, "a plaintiff still needs to allege a material misrepresentation as part of the defendants' scheme to fraud," *Affinion*, 889 F.3d at 125, and Wolhendler has not done so. While he claims that defendants have taken over the Kneses through

underhanded tactics, he has not alleged "an underlying 'scheme to defraud' animated by a material misrepresentation." *Id.* at 124; *see In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06-cv-643 (GEL), 2007 WL 2694469, at *8 (S.D.N.Y. Sept. 13, 2007) ("[I]t is necessary to identify the sense in which the conduct was deceptive, as opposed to merely untoward. Not all thefts constitute fraud; only if the theft breaches some representation, explicit or implicit, can it be said to be deceptive."). At most, Wolhendler makes "conclusory references to [defendants'] fraudulent scheme" that do not "set forth a material representation with the requisite particularity" to satisfy Rule 9(b). *Affinion*, 889 F.3d at 126. Wolhendler's failure to allege a material misrepresentation with particularity is fatal to his civil RICO claim, because "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities" prohibited by the statute. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).

Because Wolhendler has not properly pleaded predicate acts of racketeering activity, he has failed to adequately allege a substantive RICO violation. *See Sky Med. Supply Inc.*, 17 F. Supp. 3d at 222 (quoting *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).

ii.    Pattern of Racketeering Activity

Wolhendler's complaint is also deficient because Wolhendler has not adequately alleged a "pattern of racketeering activity." 18 U.S.C. § 1962(c); *see GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). Pleading such a pattern requires the plaintiff to allege that the racketeering acts he identifies "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). This so-called "continuity requirement" can be met in two ways. A plaintiff can allege that the predicate acts show a "closed-ended" pattern of racketeering activity—that is, "a series of related predicate acts extending over

11

a substantial period of time." *Spool*, 520 F.3d at 183 (citing *H.J., Inc.*, 492 U.S. at 241). Alternatively, a plaintiff can allege an "open-ended" pattern of racketeering activity that "poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Ibid.* (citing *H.J., Inc.*, 492 U.S. at 241).

Wolhendler has alleged neither a closed-ended nor an open-ended pattern of racketeering activity. He has not alleged a closed-ended pattern because he has not alleged that defendants' purported RICO violations extended over a "substantial period of time," which is generally understood to mean at least two years, *see First Capital Asset Mgmt.*, 385 F.3d at 181; *see also DiFalco v. Barnes*, 244 F.3d 286, 321 (2d Cir. 2001) ("The duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit."). Wolhendler alleges that defendants' purported fraud offenses occurred between May and November 2018, *see* Compl. ¶ 1, well below the "minimum duration necessary to find closed-ended continuity," *First Capital Asset Mgmt.*, 385 F.3d at 181; *see D.R.S. Trading Co., Inc. v. Fisher*, No. 01-cv-8028 (WHP), 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002) (collecting cases).

Wolhendler also has not alleged open-ended continuity—a threat of continuing criminal conduct extending beyond the period of racketeering activity alleged in the complaint. *Spool*, 520 F.3d at 185. Such a threat is "generally presumed when the enterprise's business is primarily or inherently unlawful." *Ibid.* But defendants' business—the Kneses—is manifestly not "primarily or inherently unlawful." *Cf. Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 150 (S.D.N.Y. 2001). Even if defendants' purported RICO enterprise could somehow be separated from the legitimate operations of the Kneses, which is doubtful, *cf. Spool*, 520 F.3d at 185-86, Wolhendler does not allege that defendants have acted primarily through fraud or that their association is inherently unlawful.

12

Open-ended continuity may also be found based on "'some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.'" *Spool*, 520 F.3d at 185 (quoting *Cofacredit*, 187 F.3d at 234). But Wolhendler does not allege that the various fraudulent acts he alleges were "the regular way" that defendants operated their business, and a court "cannot infer a threat of repeated fraud absent such allegations," *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001). Nor do the acts alleged by Wolhendler—which were discrete, few in number, and taken over a relatively brief period of time—in themselves suggest a threat of continued criminal activity. *See Cucina Classica Italiana, Inc. v. Banca Nazionale Del Lavoro*, No. 96-cv-1144 (JFK), 1997 WL 2516, at *7 (S.D.N.Y. Jan. 3, 1997) (noting that courts "have repeatedly found that such short-lived, inherently terminable schemes with few criminal acts and few victims do not show a threat of continuity sufficient to plead a RICO pattern") (collecting cases).

Moreover, the scheme alleged by Wolhendler does not support a finding of open-ended continuity because it is exceedingly narrow in scope and has a singular purpose—to take control of the Kneses and its assets. "Allegations of conduct that by its nature or design has an intended and foreseeable endpoint will not constitute open-ended continuity." *F.D. Prop. Holding*, 206 F. Supp. 2d at 371; *see Franzone v. City of New York*, No. 13-cv-5282 (NG), 2015 WL 2139121, at *10 (E.D.N.Y. May 4, 2015) (declining to find open-ended continuity where the "sole objective" of the alleged RICO scheme was "gaining control of the assets"); *Dempsey*, 132 F. Supp. 2d at 228 (declining to find open-ended continuity where the alleged fraud had the "limited goal" of extracting money from plaintiff); *see also Continental Realty Corp. v. J.C. Penney Co.*, 729 F.

Supp. 1452, 1455 (S.D.N.Y. 1990) ("[T]o infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless.").

Wolhendler has thus failed to allege a "pattern of racketeering activity" as required to state a claim under RICO. *See Sky Med. Supply Inc.*, 17 F. Supp. 3d at 225.

### iii. RICO Enterprise

Wolhendler has also failed to allege that defendants operated as part of a RICO enterprise, as required to state a RICO claim. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013); 18 U.S.C. § 1962(c). RICO defines "enterprise" broadly to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise, therefore, is "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital Asset Mgmt.*, 385 F.3d at 173 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Additionally, because a RICO enterprise is not coterminous with the pattern of racketeering activity it commits, *Turkette*, 452 U.S. at 583, the plaintiff must plead that defendants operated through an organization with "an ascertainable structure distinct from that inherent in a pattern of racketeering," *Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004).

Wolhendler has not pleaded the existence of such an organization. Wolhendler sets forth essentially no details regarding defendants' purported RICO enterprise, leaving "a plethora of unanswered questions regarding the membership, purpose, and structure of that entity." *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007). In opposing

defendants' argument that the complaint should be dismissed based on this pleading deficiency, Wolhendler merely states that "[t]he Enterprise clearly consists of the Individuals and entities" identified in his complaint. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp'n Br.") 3 (Dkt. #55). But Wolhendler cannot plead a RICO enterprise simply by asserting that defendants operated as one. At most, Wolhendler conclusorily alleges that various defendants "colluded" or "conspired" to commit various acts of fraud. *See* Compl. ¶¶ 2-5, 10, 12, 13. Such allegations are insufficient because they are "mere legal conclusions without factual support to demonstrate the existence of an 'ongoing organization.'" *101 McMurray, LLC v. Porter*, No. 10-cv-9037 (CS), 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012). And because Wolhendler does not plead any facts as to "the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants," *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, No. 11-cv-7801 (PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012), he has not successfully alleged "that the various associates of the alleged enterprise functioned as a continuing unit," *First Capital Asset Mgmt.*, 385 F.3d at 173 (quoting *Turkette*, 452 U.S. at 583) (internal quotation marks omitted). Wolhendler accordingly has not pleaded "a RICO enterprise that existed separate and apart from any pattern of racketeering activity in which the defendants engaged." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).

iv. Interstate Commerce or Foreign Commerce

To state a claim under RICO, a plaintiff must allege that defendants' RICO enterprise had at least "a 'minimal effect'" on interstate (or foreign) commerce. *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *see* 18 U.S.C. § 1962(c). "[T]he impact need not be great. So long as the activities of the enterprise affect interstate commerce, the . . . element is satisfied." *United States*

15

*v. Barton*, 647 F.2d 224, 233 (2d Cir. 1981). Wolhendler makes no allegations that defendants' purported RICO enterprise engaged in or exerted any impact on interstate or foreign commerce.

Accordingly, Wolhendler has failed to adequately plead the interstate or foreign commerce element of a RICO violation—just as he has failed to adequately plead predicate violations of RICO, a pattern of racketeering activity, or that defendants operated through a RICO enterprise. *See Sky Med. Supply Inc.*, 17 F. Supp. 3d at 222-23 (quoting *Anatian*, 193 F.3d at 88).

### B. Wolhendler Has Not Pleaded RICO Conspiracy

Finally, to the extent that Wolhendler's complaint can be read as alleging a RICO conspiracy in violation of 18 U.S.C. § 1962(d), he has failed to state a claim under that provision. To state a claim of RICO conspiracy, a plaintiff must allege that (1) defendants agreed to form and associate with a RICO enterprise; (2) defendants agreed to commit two predicate acts in the furtherance of a pattern of racketeering activity in connection with the enterprise; and (3) if those predicate acts were carried out, they would constitute a pattern of racketeering activity. *See Elsevier, Inc. v. Grossman*, No. 12-cv-5121 (KPF), 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013) (citing *Cofacredit*, 187 F.3d at 244-45). Here, the allegations pertaining to an enterprise, predicate acts, and pattern of racketeering activity in the complaint are allegations that have not been adequately pleaded, for the reasons explained above. *See First Capital Asset Mgmt.*, 385 F.3d at 182 (concluding that plaintiffs had not adequately pleaded RICO conspiracy when they had not adequately alleged substantive RICO violations). In addition, Wolhendler has not adequately pleaded an agreement to commit RICO predicate acts, because he has not alleged "facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations." *4 K & D Corp.*, 2 F. Supp. 3d at 545.

## CONCLUSION

Defendants' motions to dismiss and for judgment on the pleadings are granted. When a plaintiff is proceeding *pro se*, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *accord Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2013). Accordingly, I dismiss Wolhendler's complaint without prejudice. If Wolhendler wishes to amend his complaint, he shall file a motion to do so within 21 days, attaching the proposed amended complaint as an exhibit. The motion should explain how the amended complaint addresses the pleading defects identified in this opinion.

SO ORDERED.

                                                       /s/ Rachel Kovner
                                                    RACHEL P. KOVNER
                                                    United States District Judge

Dated:        Brooklyn, New York
                September 23, 2020